Jerry Wayne **TAYLOR**, Appellant,

v.

**STATE of Alaska,** Appellee.

No. A–6872.

Court of Appeals of Alaska.

March 19, 1999.

---

19. *See id.* at 341.

20. *See id.* at 344–45.

21. *Id.* at 345.

22. *Id.*

**124**

Larry Cohn, Anchorage, for Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*O P I N I O N*

MANNHEIMER, Judge.

Under Alaska Criminal Rule 38(a), a criminal defendant has a right to be present "at every stage of the trial". When a witness in a criminal trial asserts a privilege not to testify, may the trial judge allow the witness to explain the basis of the privilege in an *ex parte* hearing? Or does Criminal Rule 38(a) require the defendant's presence at such a hearing and guarantee the defendant's right to cross-examine the witness regarding the claim of privilege? For the reasons explained in this opinion, we hold that, notwithstanding Criminal Rule 38(a), a trial judge has the authority to hear the witness's explanation *ex parte*.

Jerry Wayne Taylor was indicted for three separate assaults on his wife, Barbara. These assaults were alleged to have occurred on June 30, July 1, and August 15, 1996. Taylor was also indicted for assaulting a police officer and a hotel security guard who tried to stop Taylor from assaulting his wife on August 15th. Finally, Taylor was indicted for assaulting a police officer in a separate incident on July 1, 1996. This assault occurred at Providence Hospital, where Taylor had gone in search of his wife. When a police officer confronted Taylor, Taylor aimed a handgun at the officer.

These various charges were set for trial in front of Superior Court Judge Eric T. Sanders, sitting without a jury. But when Barbara Taylor was called to the stand, she declared that she would refuse to testify. Through an attorney, Ms. Taylor claimed that her testimony would tend to incriminate her. When the State opposed this claim of privilege, Ms. Taylor requested an *ex parte* hearing to explain why she feared self-incrimination.[1]

---

1. The term "ex parte" refers to a proceeding in which a court hears from only one litigant or one allied group of litigants; other litigants with adverse interests are not allowed to participate. *See Black's Law Dictionary* (6th ed.1990), p. 576. The term "in camera" refers to proceedings that are not open to the public—for example, proceedings held in an anteroom, or in the judge's chambers, or in the courtroom after the public is asked to leave. *Id.* at 760.

   The Alaska Rules of Court (and Alaska appellate cases) sometimes use the term "in camera"

Jerry Taylor objected to his wife's request. Taylor claimed that the proposed hearing would be a critical stage of the proceedings against him, thus entitling him to be present when his wife explained her claim of privilege. Taylor also asserted that his right of confrontation entitled him to cross-examine his wife concerning her claim of privilege.

Judge Sanders overruled Taylor's objections and allowed Barbara Taylor to present her claim of privilege *ex parte*. After hearing Barbara Taylor's *ex parte* presentation, Judge Sanders ruled that Ms. Taylor's claim of privilege was valid and that she could not be compelled to testify.

Following this ruling, the State dismissed two counts of the indictment (the assaults on Barbara Taylor that were alleged to have occurred on June 30th and July 1st). Judge Sanders then held a bench trial on the charges stemming from the August 15th incident (the assaults on Barbara Taylor, the security guard, and the police officer). The judge acquitted Taylor of assaulting the security guard, but he found Taylor guilty of assaulting his wife and the police officer. In a separate trial, Judge Sanders found Taylor guilty of assaulting the police officer at Providence Hospital.

On appeal, Taylor contends that Judge Sanders should have allowed him to attend and participate in the hearing concerning his wife's claim of privilege. He asserts that his presence at this hearing was guaranteed by Alaska Criminal Rule 38(a) as well as his constitutional rights of due process and confrontation.[2] Taylor also contends that Judge Sanders failed to tape record this hearing, thus preventing meaningful review of Taylor's claim of error.[3]

Taylor's contention regarding the superior court's failure to tape record the proceeding is easy to resolve. Judge Sanders's in-court clerk did make a tape recording of the *ex parte* hearing. This court has a copy of the tape, and we have reviewed it as part of our deliberations in this case.

Taylor's contention regarding the right of confrontation is likewise easy to resolve. Article I, Section 11 of the Alaska Constitution guarantees criminal defendants the right "to be confronted with the witnesses against [them]". But Barbara Taylor gave no testi-

---

in a second, somewhat different sense—referring to a proceeding which the judge conducts in private, with no party present. See, for instance, Evidence Rule 509(c), which authorizes a judge to examine witnesses outside the presence of both the State and the defense in order to resolve the government's claim of the "informer" privilege.

Many *ex parte* hearings will be held *in camera* (that is, they will be closed to the public) because, often, the rationale for allowing a litigant to present their claim *ex parte* is to preserve confidentiality. However, not all *ex parte* proceedings are closed to the public. For instance, the superior and district courts are authorized to hear *ex parte* petitions for domestic violence restraining orders, *see* AS 18.66.110(a), but these petitions are usually heard in open court.

By the same token, although *in camera* proceedings sometimes involve *ex parte* motions or applications for relief, a great many *in camera* proceedings are attended by all the litigants interested in the outcome. For example, judges sometimes decide to hold *in camera* proceedings when individual prospective jurors must be questioned about sensitive matters, or when a litigant asks the court to bar public dissemination of information that might jeopardize the fairness of an upcoming trial if it became known to the community. These hearings are held *in camera*, but the matter is not litigated *ex parte*.

As illustrated by some of the cases discussed in this opinion, judges and lawyers sometimes use the term "in camera" as a loose substitute for "ex parte", especially when it is clear that the whole purpose of closing the proceedings is to allow a litigant to argue a matter *ex parte*. But these terms do refer to different concepts. In the present appeal, Taylor does not challenge Judge Sanders's decision to hear Barbara Taylor's assertion of privilege *in camera* (that is, the judge's decision to exclude the public). Rather, Taylor challenges Judge Sanders's decision to hear the assertion of privilege *ex parte* (that is, the judge's decision to exclude Taylor from the proceeding).

**2.** *See* Alaska Constitution, Article I, Sections 7 (due process) and 11 (confrontation).

**3.** *See* Alaska Administrative Rules 21(a) and 35 (which, in combination, require the electronic recording of "all judicial business involving the trial of causes and conferences with [attorneys] or litigants" to the extent practicable); *Shadle v. Anchorage*, 941 P.2d 904, 905 (Alaska App.1997) ("[W]hen there is no electronic record of the pertinent lower court proceedings, ... [and] when the missing record can not be adequately reconstructed to allow meaningful appellate review of the defendant's claims of error, the lower court's decision must be reversed and the defendant must receive a new hearing or trial.")

mony against her husband. Indeed, Ms. Taylor's successful assertion of her privilege against self-incrimination guaranteed that she would *not* testify against her husband. Taylor himself concedes (in his brief to this court) that "the defense hoped that the court [would accept Barbara Taylor's claim of privilege and] would not compel [her] to testify against her husband." It would thus appear that Judge Sanders's decision to hear Barbara Taylor's claim of privilege *ex parte* did not involve Jerry Taylor's right of confrontation.[4]

Taylor argues, however, that a potential confrontation problem arises under the facts of his case. The distinguishing features of his case, Taylor asserts, are (1) that the witness claiming the privilege was his wife, and (2) that the judge deciding the claim of privilege was also the trier of fact at Taylor's trials.

■ Taylor points out that, when his wife explained how her proposed testimony might incriminate her, it is at least conceivable that she told Judge Sanders that she had engaged in criminal conduct jointly with Taylor. Taylor argues that if Judge Sanders was in fact exposed to prejudicial information about Taylor during the *ex parte* hearing, this might have affected the judge's deliberations when he rendered his verdicts at the end of Taylor's bench trials. Thus, Taylor concludes, he was entitled to be apprised of his wife's allegations and to confront his wife concerning them.

We find that we need not resolve this issue. We have examined the tape of the proceedings, and the prejudice that Taylor feared did not occur. At this hearing, Barbara Taylor's attorneys gave only a vague description of her potential criminal liability; they provided no details of her conduct, and they made no assertions about Taylor.

These facts negate any potential claim based on Taylor's right of confrontation.

We turn now to Taylor's remaining contentions: that Judge Sanders violated Taylor's right to due process and his right to be present guaranteed by Criminal Rule 38(a) when the judge allowed Barbara Taylor to argue her claim of privilege *ex parte*.

One of the primary principles of Anglo–American criminal procedure is that, after an indictment is returned, no stage of the proceedings should take place in the defendant's absence.[5] In Alaska, this principle "is founded on the state constitutional rights of the accused to due process [of law] and to confront the witnesses against him."[6]

A defendant's right to be present during criminal proceedings is codified in Alaska Criminal Rule 38(a). With certain exceptions not pertinent here, Criminal Rule 38(a) requires a defendant's presence "at every stage of the trial". In fact, the Alaska Supreme Court has indicated that Rule 38(a) embodies a broader right of presence than is conferred by the due process and confrontation clauses of the Federal Constitution.[7]

The question presented in Taylor's appeal is whether a defendant's right to be present at all proceedings must yield when a witness asserts the privilege against self-incrimination and wishes to explain the basis of their claim to the court in private.

There are, in fact, times when Alaska law authorizes a court to conduct proceedings without the defendant. Some of these exceptions are codified in Criminal Rule 38 itself. But another exception, one more pertinent to the case at hand, is codified in Alaska Evidence Rule 509(c).

Evidence Rule 509 is pertinent to Taylor's case because it governs situations in which a party (the State) asserts the right to keep certain information secret from another par-

4. *See Henry v. State,* 861 P.2d 582, 592–93 (Alaska App.1993) (a criminal defendant's exclusion from the sentencing hearing did not violate his right of confrontation because "[t]he State did not present evidence at [the] sentencing").

5. *See Noffke v. State,* 422 P.2d 102, 104 (Alaska 1967); *Henry,* 861 P.2d at 592.

6. *Wamser v. State,* 652 P.2d 98, 101 n. 10 (Alaska 1982).

7. See the discussion of this issue in *Henry,* 861 P.2d at 593. Neither we nor the Alaska Supreme Court has decided whether Rule 38(a) confers a broader right than the due process and confrontation clauses of the Alaska Constitution.

ty. Rule 509 defines the government's privilege to withhold the identity of an "informer"—a person who has furnished information relating to a possible violation of the law or who is assisting an official investigation into a possible violation of the law.[8]

Rule 509(c)(2) governs situations in which the informer's testimony may be needed to insure that the underlying litigation is fair. Upon request of a party, the court must determine whether there is a reasonable possibility that the informer possesses information necessary to a fair determination of the litigation. If the court concludes that the informer's testimony is required, then the government faces a choice: reveal the informer's identity, or maintain this secret and forfeit the litigation.[9]

Rule 509(c)(3) governs situations in which the court may need to know the informer's identity and background in order to assess whether a search warrant was supported by probable cause under the *Aguilar-Spinelli* test.[10] If the court determines that disclosure of this information is required, the State is authorized to make the disclosure ex *parte*—that is, to the court alone.[11]

Both Rule 509(c)(2)(ii) and Rule 509(c)(3)(ii) provide that, when a judge is assessing whether to require disclosure of the informer's identity, the judge is authorized to conduct a hearing and receive testimony outside the presence of the parties.[12] That is, even though a criminal defendant is generally entitled to be present at all stages of the prosecution, these two sections of Rule 509(c) allow the judge to examine witnesses outside the defendant's presence and then

rule on the State's claim of privilege based on the witnesses' testimony.

The Commentary to Rule 509(c) recognizes that when a judge conducts such an *in camera* hearing, it is conceivable that the judge might fail to perceive all the ways in which an informer's testimony might be relevant to deciding the merits of the litigation.[13] On the other hand, the Commentary also recognizes that the informer's privilege would evaporate if this speculative possibility (that the judge had somehow failed to perceive the potential relevance of the informer's information) were enough to require disclosure of the informer's identity to the other party.[14] The Commentary declares that the *in camera* inquiry codified in Rule 509(c) is "calculated to accommodate the conflicting interests involved".[15]

Somewhat surprisingly, Evidence Rule 509 stands alone in its specification of the procedures for asserting and deciding a claim of privilege. The underlying problem—how to explain a claim of privilege without revealing privileged information—presumably arises from time to time when people assert the other codified evidentiary privileges, but the other evidence rules contain no provisions similar to Rule 509(c)(2)–(3). The Evidence Rules contain only one other reference to a court's authority to hold *ex parte* hearings to resolve a claim of privilege, and that reference is found in the Commentary to the Evidence Rules, not in the rules themselves.

Evidence Rule 508 governs the trade secrets privilege. Paragraph three of the Commentary to Rule 508 states that, when a

---

8. *See* Evidence Rule 509(a).

9. *See* Evidence Rule 509(c)(2)(i) & (iii).

10. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See also State v. Jones*, 706 P.2d 317, 324–25 (Alaska 1985) (holding that, as a matter of state law, the *Aguilar-Spinelli* test continues to govern the evaluation of hearsay information offered to support a search or seizure).

11. *See* Evidence Rule 509(c)(3)(i)-(iii).

12. The pertinent part of Rule 509(c)(2)(ii) provides: "Although the [government's] submission generally will consist of affidavits, the judge may

direct that witnesses appear before the judge, without the government or the other party present, to give testimony."

The pertinent part of Rule 509(c)(3)(ii) provides: "The judge may, if necessary, examine the informant or other witnesses about the informant, but such examination will be *in camera* and neither the defendant nor the prosecution shall be present or represented."

13. *See* Commentary to Evidence Rule 509(c), ninth paragraph.

14. *Id.*

15. *Id.*, eighth paragraph.

court is asked to assess whether information is a protected trade secret, "[t]he most common technique is to take testimony *in camera* with perhaps a requirement for sealed records. This preserves secrecy while allowing the court to reach a decision on all the facts."[16]

Other than these two references in the Evidence Rules, the Alaska Rules of Court contain only scattered authority for *in camera* proceedings at which a criminal defendant is not present. The most notable is found in Alaska Criminal Rule 16(d), the rule authorizing the courts to deny or place conditions on pre-trial discovery in criminal cases. Under Criminal Rule 16(d)(6), a court is empowered to hear such requests *ex parte* (whether the request is made by the government or the defense).

But while the rules contain only sparse explicit authority for such *ex parte* proceedings, the Alaska Supreme Court and this court repeatedly have acknowledged a trial judge's power to resolve claims of privilege by holding *in camera* hearings at which privilege-claimers are allowed to present their arguments *ex parte*.

In *Capital Information Group v. Office of the Governor*[17], the Governor of Alaska asserted the deliberative process privilege in opposition to a request for disclosure of documents. The supreme court approved the trial court's decision to examine the documents *in camera* when assessing the claim of privilege.[18] In *Matter of Mendel*[19], the supreme court directed trial judges to conduct *ex parte* hearings to resolve claims of the attorney-client privilege and the attorney work-product privilege.[20] And in *Central Construction Co. v. Home Indemnity Co.*[21],

the supreme court approved an *ex parte* proceeding as the proper mechanism to resolve a party's claim that an ostensible attorney-client privilege should be invalidated under the "crime or fraud" exception.[22]

These cases were all civil cases; for that reason, it might be argued that these cases do not really answer the question of how to weigh a privilege-claimer's need for confidentiality against a criminal defendant's right to be present. But the Alaska appellate courts have been just as ready to endorse *ex parte* proceedings in criminal cases.

In *Braham v. State*[23], the State opposed a defense request for disclosure of information concerning a witness's relationship with the police. At an *ex parte* hearing, the prosecutor informed the trial judge that the witness was working as an undercover agent in an ongoing investigation; the prosecutor claimed that premature disclosure of this relationship would jeopardize the success of the investigation.[24] Although the supreme court ultimately rejected the trial judge's resolution of this issue, the court approved the procedure specified in Criminal Rule 16(d)(6)—the rule which allows the government to present its claim to the court *ex parte*.[25]

Similarly, in *Gunnerud v. State*[26], where the State claimed that disclosure of a witness's psychiatric records would constitute an unwarranted infringement of her privacy, the supreme court approved the trial judge's decision to review the records privately to assess whether they were relevant to the defendant's case.[27] Although the supreme court did not cite the Commentary to Evidence Rule 509(c), the court's decision echoes

16. Commentary to Evidence Rule 508, third paragraph (quoting J. Weinstein & M. Berger, *Weinstein's Evidence* (1979), Paragraph 508[03] ).

17. 923 P.2d 29 (Alaska 1996).

18. *See id.* at 37 n. 5. *See also Doe v. Superior Court,* 721 P.2d 617, 626 (Alaska 1986) (directing trial judges to perform *in camera* inspection of documents when the government claims that they are protected by the executive privilege).

19. 897 P.2d 68 (Alaska 1995).

20. *See id.* at 75.

21. 794 P.2d 595 (Alaska 1990).

22. *See id.* at 598–99.

23. 571 P.2d 631 (Alaska 1977).

24. *See id.* at 642.

25. *See id.* at 643.

26. 611 P.2d 69 (Alaska 1980).

27. *See id.* at 72.

the policy embodied in that commentary. It is conceivable that a judge reviewing a witness's psychiatric records might fail to perceive all the ways in which these records might be relevant to the defendant's case. It is possible that a defense attorney, given access to the records, might be able to convince an otherwise unconvinced judge that the records were relevant. But if the law required disclosure of confidential records based on this possibility, witnesses would have no privacy. Thus, the *ex parte* inquiry approved in *Gunnerud* was "calculated to accommodate the conflicting interests involved".[28]

In *Balentine v. State*[29], this court followed the supreme court's lead and upheld a trial judge's decision to deny a defense request for disclosure of certain documents relating to the "Crime Stoppers" program. The trial judge allowed the State to argue the matter *ex parte* and, after examining the documents *in camera*, the judge concluded that they were not relevant to the defense. This court ruled that "the trial court followed the correct procedure".[30]

Thus, when a court is called upon to decide a claim of privilege, both the Alaska court rules and various Alaska appellate decisions endorse the trial court's authority to allow the privilege-claimer to argue the matter *ex parte*. This authority has been recognized not only in civil cases but also in criminal cases, where Criminal Rule 38(a) guarantees the defendant's right to be present "at every stage of the trial".

■ We do not say that a trial judge must always hear an assertion of privilege *ex parte*; the supreme court has held the opposite.[31] Nor do we say that the privilege-claimer has a right to be heard *ex parte*.

The supreme court has been chary of recognizing such a right.[32] In order to resolve Taylor's appeal, we need decide only whether a trial judge has the discretion to hear a witness's claim of privilege *ex parte*, outside the presence of the defendant. We conclude that a judge has this authority, and that such an *ex parte* hearing does not violate either Criminal Rule 38(a) or the due process clause of the Alaska Constitution.

■ A final caution: the fact that a person claims a testimonial privilege does not automatically authorize a judge to hold all related proceedings in private. A judge has the discretion to allow the matter to be argued *ex parte*, but that discretion must be exercised with due regard for the defendant's right to be present during every stage of the trial, the victim's co-extensive right to be present (now guaranteed by Article I, Section 24 of the Alaska Constitution), and the public policy codified in Administrative Rule 21(a) that, "[s]o far as practicable, all judicial business involving the trial of causes ... shall be ... transacted in open court."

■ When deciding whether to allow a person to present a claim of privilege *ex parte*, a judge must weigh these competing interests: (1) the privilege-claimer's interest in explaining the basis of the privilege without revealing protected information to others, (2) the defendant's and the victim's interests in being present during the various stages of the proceedings, and (3) the public's interest in assuring that the justice system operates in the public view and subject to public scrutiny.

At times, the basis (or lack of basis) for the claimed privilege will be obvious from the existing record, and no *ex parte* hearing will

---

**28.** *See* Commentary to Evidence Rule 509(c), eighth paragraph.

**29.** 707 P.2d 922 (Alaska App.1985).

**30.** *Id.* at 929.

**31.** *See Christensen v. NCH Corp.*, 956 P.2d 468, 473–74 (Alaska 1998) (holding that a trial judge was not obliged to conduct an *in camera* examination of assertedly privileged documents when the basis of the privilege was obvious from the offer of proof and the opposing party offered no specific basis for challenging the assertion of

privilege); *Mogg v. National Bank of Alaska*, 846 P.2d 806, 814 (Alaska 1993) (a trial judge has discretion whether to grant *in camera* review of materials relevant to a claim of privilege).

**32.** *See Alaska Dept. of Revenue v. Oliver*, 636 P.2d 1156, 1164 n. 13 (Alaska 1981) ("We express no opinion whether either the federal or state constitution guarantees an *in camera* hearing [to a litigant claiming the privilege against self-incrimination]").

be needed. See, for example, the supreme court's decision in *Christensen v. NCH Corp.*[33] At other times, a court will be unable to decide a claim of privilege unless the court hears a confidential explanation of the basis for the claim or unless the court conducts a private inspection of the assertedly privileged materials. But even in such circumstances, a judge should be mindful to conduct as much of the proceeding as reasonably possible in open court and in the defendant's presence.

In the circumstances of this case, we find that the superior court did not violate either Criminal Rule 38(a) or Taylor's right to due process when the court allowed Barbara Taylor's attorneys to explain *ex parte* the basis of her claimed privilege against self-incrimination. Accordingly, we uphold Taylor's convictions.

The judgement of the superior court is AFFIRMED.

**33.** *See* footnote 31, above.